1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   DANIEL HERNANDEZ OLVERA,              )   Case No.: 1:16-cv-0646 - JLT
                                           )
12                  Plaintiff,             )   ORDER REMANDING THE ACTION PURSUANT
                                           )   TO SENTENCE FOUR OF 42 U.S.C. § 405(g)
13           v.                            )
                                           )   ORDER DIRECTING ENTRY OF JUDGMENT IN
14   NANCY A. BERRYHILL[1],                )   FAVOR OF PLAINTIFF DANIEL HERNANDEZ
     Acting Commissioner of Social Security, )   OLVERA AND AGAINST DEFENDANT NANCY
15                                         )   BERRYHILL, ACTING COMMISSIONER OF
                                           )   SOCIAL SECURITY
16                  Defendant.             )
                                           )
17   _____ )

18           Daniel Hernandez Olvera asserts he is entitled to a period of disability, disability insurance

19   benefits, and supplemental security income under Titles II and XVI of the Social Security Act.  Plaintiff

20   argues the administrative law judge erred in evaluating the record and seeks judicial review of the

21   decision to deny his applications for benefits.  Because the ALJ erred in evaluating the medical record,

22   the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

23                                **PROCEDURAL HISTORY**

24           In 2010, Plaintiff filed an application for benefits, alleging disability beginning December 19,

25   2009.  (Doc. 10-16 at 25, 135-38)  His application "was denied initially on November 30, 2010, and

26   upon reconsideration on May 12, 2011."  (*Id.* at 25)  Plaintiff requested a hearing, and testified before

27

28           [1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal
     Rules of Civil Procedure, the Court substitutes Nancy A. Berryhill for her predecessor, Carolyn W. Colvin, as the defendant.

                                                     1

an ALJ on December 13, 2011. (*Id.*) The ALJ concluded Plaintiff was not disabled and issued an order denying benefits on January 11, 2012. (*Id.* at 25-33) The Appeals council denied Plaintiff's request for review of the decision on January 25, 2013. (*Id.* at 10-15) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

Plaintiff sought judicial review of the ALJ's decision by filing a complaint with this Court on April 9, 2013, thereby initiating Case no. 1:13-cv-00515-JLT. (*See* Doc. 10-16 at 825) The parties stipulated to a voluntary remand for further proceedings of the action on January 7, 2014. (*Id.* at 842) Specifically, the terms of the parties' stipulation provided:

> On remand, the ALJ will: (1) update the medical record and further evaluate Plaintiff's severe medically determinable impairment at step two, the sequential evaluation; (2) reevaluate Plaintiff's impairments under applicable listings at step three; (3) consider the effects of obesity in accordance with FSR 02 – 1P; (4) reassess Plaintiff's residual functional capacity by reevaluating and weighing the medical and other opinions of record; (5) reevaluate Plaintiff's credibility; and , if necessary, (6) obtain medical expert evidence regarding the nature and severity of Plaintiff's impairments and their limiting effects; and if warranted, (7) obtain supplemental evidence from a vocational expert in light of new evidence.

(*Id.*) Accordingly, the Court remanded the action for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). (*Id.* at 843)

After receiving the order from the Court, the Appeals Council vacated the ALJ's decision and remanded the action to the ALJ on March 18, 2014. (Doc. 10-16 at 851-54) After holding a second hearing, the ALJ concluded Plaintiff was not disabled and issued an unfavorable decision on September 8, 2014. (*Id.* at 745-56) Plaintiff filed exceptions to the decision on October 28, 2014, asserting the ALJ erred in evaluating the opinion of his treating physician and relying upon the testimony of the vocational expert. (*Id.* at 732-34) The Appeals Council found the exceptions were "unpersusasive" and declined to assume jurisdiction on March 16, 2016. (*Id.* at 719-23) Therefore, the ALJ's decision became the final decision of the Commissioner. (*Id.* at 21)

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's

determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the

3

ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.    Relevant Medical Evidence**

Dr. Michelle Quiogue, Plaintiff's treating physician, completed a Work Status Report on January 22, 2014. (Doc. 10-16 at 909) She noted that Plaintiff had a fusion of the right knee and a mid-foot amputation on his right foot. (*Id.*) According to Dr. Quiogue, Plaintiff had "permanent modified work/activity restrictions," which applied to activities at both at work and at home. (*Id.*) Specifically, Dr. Quiogue opined:

> This patient's activity is modified as follows:
> - Stand: Occasionally (up to 25% of shift), for no more than 30 cumulative minutes per hour
> - Walk: Occasionally (up to 25% of shift), for no more than 30 cumulative minutes per hour
> - Sit: Occasionally (up to 25% of shift), for no more than 30 cumulative minutes per hour
> - Drive: Occasionally (up to 25% of shift), for no more than 30 cumulative minutes per hour
> - Bend at the waist:  Occasionally (up to 25% of shift).
> - Torso/spine twist:  Not at all.
> - Squat/kneel, knee bending:  Not at all.
> - Climb stairs:  Not at all.
> - Climb ladders:  Not at all.
> - Use of scaffolds/work at height: Not at all.
> - Lift/carry/push/pull no more than 20 pounds.

(*Id.*)

**B.    Relevant Administrative Hearing Testimony**

Vocational expert Susan Lovell ("the VE") testified at the hearing before the ALJ on July 14, 2014. (Doc. 10-16 at 782) The VE stated Plaintiff's past relevant work was classified by the *Dictionary of Occupational Titles*[2] as "maintenance engineer or janitor," DOT 382-664-010, which was medium work. (*Id.*)

The ALJ asked the VE to consider "a hypothetical question…based on Mr. Olvera's treating physician," Dr. Quiogue. (Doc. 10-16 at 782) The ALJ stated:

> Dr. [Quoigue] says the claimant can stand 25 percent of the day but no more than 30 minutes in an hour; walk no more than 30 minutes per hour but also for up to two hours in an eight hour day so 25 percent of the day. So that's standing and walking cumulative for fours in an enough hour day with no more than 30 minutes per hour; sitting the same

---

[2] *The Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

way; and driving the same way, so combined sitting and driving would also be four hours a day but no more than 30 minutes per hour; occasional bending at the waist; no twisting of the spine, climbing stairs, squatting or kneeling; and lift 20 pounds.

(*Id.* at 782-83)  The ALJ then summarized the limitations stating, "basically, it sounds like the individual is able to complete an eight hour workday if given the option to alternate between sitting and standing in up to 30-minute increments, lift 20 pounds." (*Id.* at 783)  The VE testified that she "would look at light, unskilled jobs that had that kind of flexibility." (*Id.* at 784)  She concluded the individual could perform the work of a storage facility clerk, DOT 295.367-026; mail room clerk, DOT 209.687-026; and outside deliverer, DOT 230.663-010.[3] (*Id.*)

Plaintiff's counsel, Brian Shapiro, asked the VE to "describe the occupation of storage facility clerk." (Doc. 10-16 at 784)  The VE responded:

They work in a storage facility primarily in the office, and people come in and want to rent a facility and they give them the information, give them a form to fill out.  Some of them, and it varies by employer, some of them have go-carts and they drive around the facility a couple times a day just to check on things.  Some of the smaller ones, they have to empty them if people haven't, you know, paid their rent.  But nowadays, they call people often but that possibility could come up in a smaller facility.

(*Id.* at 785)  Mr. Shapiro asked the VE to explain "what makes the job light," to which she responded: "I didn't make the job light, the *DOT* did, and they have lots of jobs in the light category which are performed, you know, primarily sitting down or – it's just something that the *DOT* decided to do." (*Id.*)

Mr. Shapiro questioned whether the VE believed it was "more of a sedentary job" than one that required light exertion.  (Doc. 10-16 at 785)  She responded that the storage facility position was "one of the best jobs that a person can alternate between sitting and standing." (*Id.*)  When Mr. Shapiro responded that she was not answering his question, she stated that she "would call it a light job," but when asked why she classified it as light work, the VE responded: "I told you, I don't know." (*Id.* at 786)  The VE then read into the definition of light work from the *Dictionary of Occupational Titles* into the record, and Mr. Shapiro stated: "I was well aware of that definition. My question is to the vocational expert is, what makes this job light?  And if it can be done sitting and he's not lifting over 20 pounds, what makes the job light?" (*Id.* at 787-88)  The VE responded, "The people that made the

---

[3] The VE erroneously identified the job number as DOT 230.667-010.  (Doc. 10-16 as 784)  The correct job number for the "outside deliverer" position is DOT 230.663-010.  *See* 1991 WL 6722160.

5

*DOT* said it was light…" (*Id.* at 788)  She then stated: "I'm not going to argue, I'm sorry. I don't like arguing." (*Id.* at 788)  Mr. Shapiro did not ask the VE further questions regarding the physical requirements of the positions identified.

**C.    The ALJ's Findings**

Pursuant to the five-step process, the ALJ first determined Plaintiff "engaged in substantial gainful activity during the following periods: February 2010 through September 2010." (Doc. 10-16 at 747)  Therefore, the ALJ indicated his findings "address the period(s) the claimant did not engage in substantial gainful activity." (*Id.* at 748)  At step two, the ALJ found Plaintiff's severe impairments included: "status post knee fusion, partial right foot amputation, diabetes mellitus, herniated disc, obesity, and osteoarthritis." (*Id.*)  At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing. (*Id.* at 748-49)  Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [he can] lift 20 pounds, stand and walk for four hours in an eight hour day, and sit for four hours in an eight hour day.

(*Id.* at 749)  With these limitations, the ALJ concluded Plaintiff was not able to perform any past relevant work. (*Id.* at 754)  However, the ALJ concluded, "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform," including storage facility clerk, mailroom clerk, and outside delivery (*Id.* at 755)  Therefore, the ALJ found Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 755-56)

## DISCUSSION AND ANALYSIS

Plaintiff contends the ALJ erred in rejecting the opinion of Dr. Quiogue in formulating the above residual functional capacity. (Doc. 18 at 5-10)  On the other hand, the Commissioner contends "the ALJ did not reject" the opinion. (Doc. 19 at 3)  In addition, the Commissioner asserts that any error by the ALJ was harmless because "all of Dr. Quiogue's restrictions were presented to the vocational expert … at the administrative hearing." (*Id.* at 4)

**A.    Evaluation of the Medical Evidence**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating

6

physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A physician's opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). As the ALJ indicated with his summary of the medical evidence, the opinion of Dr. Quiogue was contradicted by the limitations set forth by both examining and non-examining physicians. (*See* Doc. 10-16 at 750-51) Consequently, the ALJ was required to set forth specific and legitimate reasons for rejecting the opinions articulated by Dr. Quiogue.

### 1. Evaluation of Dr. Quiogue's opinion

Examining the medical evidence, the ALJ summarized the conclusions of Dr. Quiogue and explained the weight given as follows:

> In accordance with 20 CFR 404.1527, the opinions of the claimant's treating sources are given more weight because they had the opportunity to treat the claimant. However, Dr. Quoigue's opinion only applies to past relevant work [and] she has not precluded the claimant from all work-related activities. Certain aspects of the doctor's opinion are in fact consistent with the residual functional capacity determined in this decision.

(Doc. 10-16 at 753-754)  Plaintiff argues "[t]his is not specific and legitimate rationale" for rejecting the limitations of Dr. Quiogue.  (Doc. 15 at 15-21)

As Plaintiff observes, the ALJ did not include the postural limitations identified by Dr. Quiogue in the residual functional capacity.  (*See* Doc. 18 at 8)  The ALJ found Plaintiff could "stand and walk for four hours in an eight hour day, and sit for four hours in an eight hour day."  (Doc. 10-16 at 749)  As a result, the ALJ implicitly rejected Dr. Quiogue's conclusions that Plaintiff was limited to bending on an occasional basis, and could never twist, squat, kneel, climb, use scaffolds, or work at heights.  (*See* Doc. 10-16 at 909)  Indeed, Defendant "admits that not all the limitations presented by Dr. Quiogue are stated in the ALJ's RFC." (Doc. 19 at 4)

Although the ALJ believed the document completed by Dr. Quiogue "only applie[d] to past relevant work," the form clearly indicates that the limitations applied "**to work and home**."  (Doc. 10-16 at 909, emphasis in original)  In addition, the fact that Dr. Quiogue did not preclude Plaintiff from *all* work-related activities does not support the ALJ's decision to reject the activities that Dr. Quiogue opined Plaintiff could not perform.  Consequently, the ALJ failed to identify any specific and legitimate reason for rejecting the limitations assessed by Dr. Quiogue.

Moreover, the ALJ's residual functional capacity appears to be based upon an unreasonable interpretation of the medical opinion offered by Dr. Quiogue, who opined that Plaintiff was limited to standing for two hours, walking for two hours, sitting for two hours, and driving for two hours.  (*See* Doc. 10-16 at 909)  A plain reading of the document indicates that Plaintiff would not be able to sit for two hours and then drive for two hours, considering Plaintiff would need to be in a sitting position to drive.  Regardless—even assuming the ALJ's interpretation of the document is correct—the ALJ erred by not incorporating the postural limitations identified by Dr. Quiogue in the residual functional capacity, given the failure to reject the specific limitations.

2.      Whether the error was harmless

The Commissioner argues "the ALJ's [error] in failing to properly state Plaintiff's RFC in his decision was harmless" because all the limitations were presented to the vocational expert, who testified an individual with the same limitations could work as a storage facility clerk, mailroom clerk, and outside deliverer.  (Doc. 19 at 4)  Accordingly, the Commissioner contends "the ALJ's mistake

…is not grounds for reversal." (*Id.*, citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008))

### a. Step five standards

At step five, the burden shifts to the Commissioner to show that Plaintiff can perform other substantial gainful activity and a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (discussing the burden shift at step five). To make this determination, the ALJ may rely upon job descriptions in the *Dictionary of Occupational Titles* ("*DOT*"), which classifies jobs by their exertional and skill requirements, and is published by the United States Department of Labor, Employment & Training Administration. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R. § 404.1566(d)(1). In the alternative, the ALJ may call a vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *see also* Social Security Ruling ("SSR") 00-4p[4], 2000 WL 1898704 at *2 ("In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy.")

The ALJ called upon vocational expert Susan Lovell, who "testified about the claimant's past work and responded to hypothetical questions concerning his ability to perform past work and other occupations." (Doc. 10-16 at 754) The ALJ summarized the limitations of Dr. Quiogue, as the ALJ interpreted them, asked the VE to consider an individual who was "able to complete an eight hour workday if given the option to alternate between sitting and standing in up to 30-minute increments, lift 20 pounds." (*Id.* at 783) The ALJ noted that "the *Dictionary of Occupational Titles* does not discuss the sit/stand opinion," and asked the VE if "there was something in [her] work history that gives [her] the expertise to identify jobs that permit a sit/stand option." (*Id.*) In response, the VE responded that she had performed "extensive job analyses and ergonomic evaluations since the late '70s, early '80s." (*Id.*) The VE then testified that she "would look at light, unskilled jobs that had that kind of

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

flexibility," and opined an individual who needed a sit/stand option could work as a storage facility clerk, mail room clerk, and outside deliverer. (*Id.* at 784)

> b.     *Conflicts with the Dictionary of Occupational Titles*

Pursuant to SSR 00-4p, occupational evidence provided by a vocational expert "generally should be consistent with the occupational information supplied by the DOT." *Id.*, 2000 WL 1898704 at *2. When there is a conflict between the testimony of the vocational expert and the *Dictionary of Occupational Titles*, "the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert testimony] to support a determination or decision about whether the claimant is disabled." *Id.* Further, SSR 00-4p provides:

> At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the [vocational expert] evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert] testimony rather than on the DOT information.

*Id.* Accordingly, the Ninth Circuit has determined an ALJ must inquire "whether the testimony conflicts with the *Dictionary of Occupational Titles*," and may only rely upon conflicting expert testimony when "the record contains persuasive evidence to support the deviation." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

> ii.     *Whether there is a conflict*

Based upon the vocational expert's testimony, the ALJ concluded Plaintiff was able to perform the requirements of unskilled, light work including the following representative occupations: storage facility clerk, DOT 295.367-026; mail room clerk, DOT 209.687-026; and outside deliverer, DOT 230.663-010. (Doc. 10-16 at 755) The ALJ asserted, "Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (*Id.*) However, light work appears to require more strenuous activities than Plaintiff can perform according to Dr. Quiogue.

Under the *Dictionary of Occupational Titles*, each of the representative positions identified above indicate are identified as "light work," and explain a job is classified as light work when: "(1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the

time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." *See* DOT 295.367-026, 1991 WL 672594 (storage facility clerk); DOT 209.687-026, 1991 WL 671813 (mail room clerk); and outside deliverer, DOT 230.663-010, 1991 WL 672160 (outside deliverer). The positions further specify the "[p]hysical demand requirements are in excess of those for Sedentary Work." (*Id.*) As explained in the Regulations, sedentary jobs include those in which "walking and standing are required only occasionally." *See, e.g.,* 20 C.F.R. § 404.1567(a). Accordingly, jobs identified as sedentary require walking and standing on an *occasional* basis, while jobs identified as light require the ability to walk and stand on a *frequent* basis. *See id.; see also* SSR 83-10 (explaining "frequent" involves activities "from one-third to two-thirds of the time" and "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday").

Importantly, although the vocational expert testified the jobs she identified could be performed by an individual who needed the option to sit and stand, her testimony that a person who can only stand or walk for up to four hours a day, or sit for up to four hours, is contrary to the physical requirements under the *Dictionary of Occupational Titles. See, e.g.*, DOT 295.367-026, 1991 WL 672594. Specifically, Plaintiff's restriction to four hours of sitting conflicts with the ability to "sit[] for most of the time." Likewise, Plaintiff's limitation to four hours of standing and walking clearly conflicts with these job requirements. *See, e.g., Barbour v. Colvin*, 2016 WL 7383351 at *8 (D. Nev. July 29, 2016) (finding "an apparent conflict" between the vocational expert's testimony that a person restricted "to standing and walking four hours in an eight-hour day" could perform the jobs identified as light work under the *Dictionary of Occupational Titles* "when a light job requires an individual to stand and walk more than this"); *Applegate v. Comm'r of SSA*, 2015 WL 1825405 at *7 (D. Or. Apr. 22, 2015) ("The VE's testimony that the three jobs could be performed with the four-hour stand/walk limitation is inconsistent with the DOT, however, because the DOT classifies them as light jobs requiring six hours of standing/ walking").

In addition, the vocational expert's testimony conflicted with additional limitations specified by Dr. Quiogue and included in the ALJ's hypothetical question. For example, Dr. Quiogue opined that

Plaintiff should never kneel. (Doc. 16 at 909) However, the position of storage facility rental clerk indicates that kneeling may be required on an "occasional" basis. DOT 295.387-026, 1991 WL 672594. In addition, while Dr. Quiogue indicated Plaintiff was limited to "occasionally" driving "for no more than 30 cumulative minutes per hour," and up to two hours total in a day, the position of outside deliverer requires "significant" driving. DOT 230.663-010, 1991 WL 672160 (outside deliverer). Accordingly, the Court finds there are several apparent conflicts between the *Dictionary of Occupational Titles* and the testimony of the vocational expert.

### iii.    Whether the record supports the conflict

When there is a conflict between the testimony of a vocational expert and the *Dictionary of Occupational Titles*, the Court may rely upon the testimony only when "the record contains persuasive evidence to support the deviation." *Massachi*, 486 F.3d at 1153. Importantly, there is no indication in the record that the ALJ was aware of the conflicts between Plaintiff's four-hour limitations with the requirements of the jobs as defined by the *Dictionary of Occupational Titles*. Indeed, the ALJ failed to inquire of the vocational expert whether her testimony was consistent with the *Dictionary of Occupational Titles* after she identified the three positions. *See Massachi*, 486 F.3d at 1153. Rather, the ALJ addressed only the sit/stand option with the vocational expert and did not elicit any testimony regarding the conflicts identified above.

Furthermore, when Plaintiff's counsel attempted to question the vocational expert regarding the storage facility work and "what makes the job light," the vocational expert responded she did not know. (Doc. 10-16 at 785-86) The line of questioning was cut off, and the vocational expert did not testify as to the basis of her belief that Plaintiff could perform the jobs identified with his standing, walking, or sitting limitations.[5] As a result, the ALJ was unable to resolve the conflict between the two vocational resources, as is required by the Ninth Circuit. *See Johnson*, 60 F.3d at 1435; *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("in order for the ALJ to rely on a job description in the *Dictionary of Occupational Titles* that fails to comport with a claimant's noted limitations, the ALJ

---

[5] As noted by the court in *Barbour*, "[t]he general statement that the VE has placed people in jobs in the field does nothing to explain how a person with an RFC close to sedentary, with a limitation to standing/walking up to four hours in a day can perform a job performed at the light level, which requires standing/walking six hours in an eight-hour day." *Barbour*, 2016 WL 7383351 at *10.

must definitively explain this deviation").

Because the ALJ did not address the apparent conflicts, and the vocational expert did not explain her reasoning, the record cannot support the deviation. Accordingly, the Court finds the error in relying upon the vocational expert's testimony was not harmless. *See Zavalin v. Colvin,* 778 F.3d 842, 848 (9th Cir. 2015) (an ALJ's failure to reconcile apparent conflict was not harmless where the Court "cannot determine [from the record] whether substantial evidence supports the ALJ's step-five finding").

**B.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ erred in his evaluation and interpretation of the medical evidence, and failed to identify legally sufficient reasons for rejecting the limitations assessed by Dr. Quiogue when formulating the residual functional capacity. Therefore, the matter should be remanded for the ALJ to re-evaluate the medical evidence to determine Plaintiff's residual functional capacity. *See Moisa* , 367 F.3d at 886. In addition, the ALJ must resolve the conflicts between the testimony of a vocational expert and the *Dictionary of Occupational Titles. See Dieugenio v. Astrue*, 2010 WL 317269 at *3 (C.D. Cal. Jan. 19, 2010) (holding that where the expert claimed that his testimony was consistent with information in the *Dictionary of Occupational Titles* but a review of the descriptions "reveal[ed] a

1    conflict with respect to the jobs identified," failure to address the conflict warranted a remand for

2    further proceedings).

3                               **<u>CONCLUSION AND ORDER</u>**

4         For the reasons set forth above, the Court finds the ALJ's decision lacks the support of

5    substantial evidence in the record.  Accordingly, the decision cannot be upheld by the Court.  *See*

6    *Sanchez*, 812 F.2d at 510.  Based upon the foregoing, the Court **ORDERS**:

7         1.      The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further

8                  proceedings consistent with this decision; and

9         2.      The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Daniel

10                 Hernandez Olvera and against Defendant, Nancy A. Berryhill, Acting Commissioner of

11                 Social Security.

12

13   IT IS SO ORDERED.

14      Dated:    **August 9, 2017**                   **/s/ Jennifer L. Thurston**

15                                          UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28